1
2
3
4
5
6                        UNITED STATES DISTRICT COURT
7                      WESTERN DISTRICT OF WASHINGTON
                                  AT SEATTLE
8
9    UNITED STATES OF AMERICA,                    Case No. CR14-59RSL
10                        Plaintiff,
                                                  ORDER DENYING
11          v.                                    DEFENDANT'S MOTION
                                                  FOR COMPASSIONATE
12   SHAWN LUNDY,                                 RELEASE
13                        Defendant.
14

15          This matter comes before the Court on defendant's motion for compassionate release

16   pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. # 298). Having considered the motion and the

17   record contained herein,[1] the Court finds as follows:

18                          I.      BACKGROUND

19          Defendant is a 67-year-old inmate currently incarcerated at Federal Correctional

20   Institution Elkton ("FCI Elkton"). Dkts. # 298 at 1–2, # 303 at 5. On November 24, 2014,

21   defendant pled guilty to two offenses: conspiracy to distribute heroin, in violation of 21 U.S.C.

22   §§ 841(a)(1), 841(b)(1)(A), and 846; and possession of counterfeit obligations or securities, in

23   violation of 18 U.S.C. § 472. Dkt. # 203. On March 27, 2015, defendant appeared before the

24   Court for sentencing for these offenses, as well as for his supervised release violations under

25

26          [1] The Court finds compelling reasons justify sealing both (1) defendant's motion (Dkt. # 298)
     and (2) the government's exhibits A and B as they contain defendant's sensitive medical information
27   (Dkt. # 305). The parties' respective motions to seal (Dkts. # 297, # 304) are accordingly GRANTED.
     The government's motion to file an overlength brief (Dkt. # 302) is also GRANTED.
28

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 1

case no. CR00-283RSL. Dkt. # 242. The Court sentenced defendant to a 120-month prison term and five years of supervised release. Dkt. # 243. Defendant is currently scheduled for release from the custody of the Federal Bureau of Prisons ("BOP") on September 17, 2022. Dkts. # 298 at 1, # 303 at 5. He now moves for compassionate release.

## II.    LEGAL FRAMEWORK

The compassionate release statute provides narrow grounds for defendants in "extraordinary and compelling" circumstances to be released from prison early. See 18 U.S.C. § 3582(c). The First Step Act of 2018 amended the procedural requirements governing compassionate release. See id. Prior to the First Step Act's passage, only the Director of the BOP could bring motions for compassionate release. The Director rarely filed such motions. See, e.g., United States v. Brown, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019). Congress amended the statute to allow defendants to directly petition district courts for compassionate release. As amended, 18 U.S.C. § 3582(c)(1)(A) states in relevant part,

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;  . . .
>
> (ii)  . . .

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 2

1
2
> and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission[.]

3
4
5
Prior to passing the First Step Act, Congress directed the Sentencing Commission to promulgate a policy statement defining "extraordinary and compelling reasons" in the compassionate release context. See 28 U.S.C. § 994(t). Section 994(t) provides,

6
7
8
9
10
> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in [18 U.S.C. § 3582(c)(1)(A)], shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

11
12
The Sentencing Commission implemented this directive from Congress with a policy statement—U.S.S.G. § 1B1.13. In relevant part, the policy statement provides,

13
**Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)**

14
15
16
17
18
Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that—

19
> (1)(A) Extraordinary and compelling reasons warrant the reduction; . . .

20
21
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

22
> (3) The reduction is consistent with this policy statement.

23
**Commentary**

24
**Application Notes:**

25
26
27
1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

28
> (A) **Medical Condition of the Defendant—**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)    The defendant is—

    (I)    suffering from a serious physical or medical condition,

    (II)    suffering from a serious functional or cognitive impairment, or

    (III)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**—

(i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 4

2. **Foreseeability of Extraordinary and Compelling Reasons.**— For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

3. **Rehabilitation of the Defendant.**—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.

4. **Motion by the Director of the Bureau of Prisons.**—A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A). The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1. The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.

This policy statement shall not be construed to confer upon the defendant any right not otherwise recognized in law[.]

U.S.S.G. § 1B1.13. The Ninth Circuit has held that U.S.S.G. § 1B1.13 "is not an 'applicable policy statement' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." United States v. Aruda, 993 F.3d 797, 802 (9th Cir. 2021). The Court may consider U.S.S.G. § 1B1.13 in exercising its discretion, but the policy statement is not binding. Id.; see United States v. Van Cleave, Nos. CR03-247-RSL, CR04-125-RSL, 2020 WL 2800769, at *3–5 (W.D. Wash. May 29, 2020) (referring to the guidance of U.S.S.G. § 1B1.13 as "persuasive, but not binding").

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 5

### III.   DEFENDANT'S CIRCUMSTANCES

#### a.  Exhaustion Requirement

Prior to considering the merits of defendant's motion, the Court must determine whether he has met the statutory exhaustion requirement for compassionate release. See 18 U.S.C. § 3582(c)(1)(A). The Ninth Circuit recently held that "§ 3582(c)(1)(A)'s administrative exhaustion requirement imposes a mandatory claim-processing rule that must be enforced when properly invoked." United States v. Keller, Nos. 20-50247, 21-50035, 2021 WL 2695129, at *3 (9th Cir. July 1, 2021). The government contends that defendant has not satisfied this exhaustion requirement because defendant did not attach any compassionate release request to his motion and the government was unable to independently corroborate that such a request was ever made to the Warden. Dkt. # 303 at 10.

Defendant's reply attached a letter from defendant's attorney dated April 27, 2020, requesting that "Mr. Lundy be permitted to serve the balance of his sentence in home confinement." Dkt. # 307-1 at 1. Nowhere does the request mention "compassionate release" or 18 U.S.C. § 3582(c)(1)(A). And nowhere does the letter request that the duration of his sentence be reduced or terminated entirely. See Dkt. # 307-1 at 2 (requesting "to complete the balance of his sentence in home confinement"). Rather, the April 27, 2020 letter referenced then-Attorney General Barr's memorandum expanding the cohort of inmates who could be considered for home confinement pursuant to the CARES Act. Dkt. # 307-1 at 1; Office of the Attorney General, Memorandum for Director of Bureau of Prisons: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), available at https://www.justice.gov/ file/1266661/download (last visited July 27, 2021). BOP authority to change a prisoner's placement to home confinement derives from 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541, and it is distinct from the statutory framework governing compassionate release. The Court declines to construe the April 27, 2020 letter as a request for compassionate release and concludes that this letter did not trigger the thirty-day lapse period under 18 U.S.C. § 3582(c)(1)(A). See United States v. Lautenslager, No. 2:17-cr-00053-JAM, 2020 WL 2836777, at *2 (E.D. Cal. June 1, 2020) (request for home confinement is not a request for

1  compassionate release and does not trigger the administrative remedies exhaustion period);

2  United States v. Holden, 452 F. Supp. 3d 946, 969–71 (D. Or. 2020) (same). Thus, defendant

3  has failed to exhaust and his motion must be denied accordingly. Even assuming, *arguendo*, that

4  defendant had met the exhaustion requirement, the Court nevertheless determines that

5  defendant's motion for compassionate release must be denied for other reasons.

6                 **b.  "Extraordinary and Compelling" Circumstances**

7         Defendant's motion for compassionate release is based primarily on the following:

8  defendant's age and medical conditions, including the effects of a traumatic brain injury suffered

9  during his incarceration, and his heightened risk for developing serious complications if he

10  contracts COVID-19 again while incarcerated at FCI Elkton.[2] Dkt. # 298 at 2–10. The Court

11  addresses each of these rationales in turn, beginning with defendant's reasoning related to

12  COVID-19 risk.

13         The Court need not reiterate the widely known information regarding the symptoms of

14  COVID-19 and the devastating global impact of the virus. COVID-19 has created

15  unprecedented challenges for federal prisons, where inmate populations are large and close

16  contact between inmates is unavoidable. As of July 27, 2021, the BOP reports 214 federal

17  inmates and 137 BOP staff have active, confirmed positive COVID-19 test results. See COVID-

18  19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 27,

19  2021). Since the BOP reported its first case in late March 2020, at least 240 federal inmates and

20  four BOP staff members have died from the virus. Id. FCI Elkton currently reports zero inmates

21  and one staff member with active, positive COVID-19 test results. Id. BOP has classified 784

22  inmates and 85 staff at FCI Elkton as having "recovered" from the virus and nine inmates as

23  having died from it. Id. The Court acknowledges that the COVID-19 outlook is not as bleak as it

24  was last spring given vaccination progress in BOP facilities. See COVID-19 Coronavirus, Fed.

25  Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited July 27, 2021)

26

27      [2] Defendant tested positive for COVID-19 while at FCI Elkton. Dkt. # 298-1 at 26. BOP medical records indicate that he had no serious complications. Dkt. # 305 at 9, 42 (reflecting "asymptomatic" in

28  July 2020).

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 7

1   (reflecting that 1,103 inmates are vaccinated at FCI Elkton). Almost 80% of FCI Elkton's

2   inmate population is now vaccinated. See FCI Elkton, Fed. Bureau of Prisons, https://www.bop.

3   gov/locations/institutions/elk/ (last visited July 27, 2021) (reflecting a population of 1,393 total

4   inmates).

5          Defendant claims that he is more vulnerable to COVID-19 because of his hypertension

6   and overweight condition. Dkt. # 298 at 7. The CDC has identified hypertension and overweight

7   as conditions that can make a person more likely to get severely ill from COVID-19. See People

8   with Certain Medical Conditions, CDC (May 13, 2021), https://www.cdc.gov/coronavirus/2019-

9   ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 27, 2021).

10  BOP medical records reflect, however, that defendant's hypertension is in remission, Dkt.

11  # 298-1 at 25, Dkt. # 305 at 26, which defendant acknowledges. Dkt. # 298 at 7. As for

12  defendant's overweight condition, only ten pounds separate defendant from being a normal

13  weight. See Healthy Weight, Nutrition, and Physical Activity, CDC, https://www.cdc.gov/

14  healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited

15  July 27, 2021) (calculating the BMI with a height of 69 inches and 168 pounds instead of 178

16  pounds); Dkt. # 298-1 at 27; Dkt. # 305 at 30. The conditions defendant points to provide little

17  persuasive force for the conclusion that defendant would be much more vulnerable to COVID-

18  19 than the typical inmate. That said, defendant's age, sixty-seven years, places him on the

19  higher end of the spectrum for vulnerability to COVID-19. Risk for COVID-19 Infection,

20  Hospitalization, and Death By Age Group, CDC (July 19, 2021), https://www.cdc.gov/

21  coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html

22  (last visited July 27, 2021).

23         Even if the Court were inclined to find that defendant's vulnerability to COVID-19

24  would constitute an extraordinary and compelling reason for compassionate release based on his

25  hypertension (in remission), overweight condition, and age, the government has presented

26  evidence related to defendant's access to COVID-19 vaccination that undercuts defendant's

27  argument. Defendant was offered the Moderna COVID-19 vaccine on February 26, 2021, and he

28  refused it. Dkt. # 305 at 43. The overwhelming scientific consensus is that vaccination is a safe

1    and effective way to avoid contracting the virus. <u>Key Things to Know About COVID-19</u>

2    <u>Vaccines</u>, CDC (June 25, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/

3    keythingstoknow.html (last visited July 27, 2021). Defendant does not address his refusal of the

4    Moderna COVID-19 vaccine. <u>See generally</u> Dkt. # 307. Defendant's failure to offer any

5    explanation for his decision to decline the vaccine weighs against compassionate release on the

6    basis of vulnerability to COVID-19. <u>See</u> <u>United States v. Baeza-Vargas</u>, No. CR-10-00448-010-

7    PHX-JAT, 2021 WL 1250349, at *2–3 (D. Ariz. Apr. 5, 2021) ("Judges of this Court, as well as

8    others around the country, have ruled with consistency that an inmate's denial of a COVID-19

9    vaccination weighs against a finding of extraordinary and compelling circumstances."). The

10   Court finds that defendant's argument regarding COVID-19 vulnerability does not establish an

11   extraordinary and compelling basis for compassionate release.

12       With respect to defendant's argument regarding his age and medical conditions unrelated

13   to COVID-19, this argument is also unavailing. Defendant asserts that as of the date of

14   sentencing on March 27, 2015, defendant had a tumor on his kidney, an enlarged prostate, skin

15   tumors, and a hernia. Dkt. # 298 at 2. Defendant does not assert that these existing conditions

16   have worsened. Rather, defendant contends that since his incarceration, "additional conditions

17   have diminished his physical well being [sic] and made his term of incarceration significantly

18   more onerous." <u>Id.</u> Defendant alleges that during his incarceration, on April 6, 2016, another

19   inmate attacked him with a brick. <u>Id.</u> at 2–3. Defendant asserts that he was initially under the

20   impression that he hurt his head after a fall, not after an assault by a fellow inmate. <u>Id.</u>

21   Defendant does not explain how he came to his realization regarding the alleged assault. A BOP

22   neurology consultation report concluded that defendant had a "[traumatic brain injury], post

23   concussion syndrome," and observed that defendant reported problems with memory and

24   dizziness and "feel[ing] in a fog." Dkt. # 298-1 at 7. After defendant's injury, he began having

25   seizures, which continue to be treated by prescription medication. Dkt. # 305 at 3. According to

26   defendant's recent clinical encounter on May 28, 2021, defendant reported that he had to

27   withdraw from the RDAP program because he could not take the "mental stress/focus" it

28   requires, and he reported that he continues to feel "foggy." Dkt. # 305 at 3. Defendant also

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 9

highlights that he has been assigned a cell on the first floor and a lower bunk. Dkt. # 298 at 6; Dkt. # 305 at 44.

Defendant argues that his circumstances related to age and health are extraordinary and compelling because they are encompassed by the policy statement commentary defining this term, specifically, U.S.S.G. § 1B1.13 Note 1(B) ("Age of the Defendant"). See Dkt. # 298 at 9 ("U.S.S.G. § 1B1.13, application note 1(B) provides further basis for a reduction in sentence."). Although the U.S.S.G. § 1B1.13 policy statement is not binding, Aruda, 993 F.3d at 802, the Court finds it instructive regarding the type of circumstances that would be extraordinary and compelling. Under Note 1(B), extraordinary and compelling reasons exist based on age when the "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B). The government does not address Note 1(B) specifically and appears to analyze the import of defendant's medical conditions exclusively as they relate to defendant's vulnerability to COVID-19.

Here, defendant obviously meets condition (i) of Note 1(B) because he is 67 years old. It appears that condition (iii) would be met as of August 27, 2021, at which point defendant will have served seventy five percent of his sentence. Dkt. # 298 at 9. Condition (ii), however, is not met here. Although defendant has a seizure disorder and has reported that he has had trouble focusing, Dkt. # 305 at 3–5, 14–16, this does not constitute "serious deterioration in physical or mental health because of the aging process." At his May 28, 2021 clinical encounter, defendant shared that he does well for "8 hours / day" before feeling foggy and wanting to nap in the afternoon. Id. at 3. Defendant has recently worked a job preparing packaged meals and he was able to complete a drug education program a few months ago. Id.; Dkt. # 298-1 at 24. The status of defendant's health appears much better than that of defendants for whom courts have granted relief based on circumstances related to age and deterioration of health. See, e.g., United States v. Mondaca, No. 89-CR-0655 DMS, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (finding condition (ii) met where individual was enrolled in general chronic care clinic; was diagnosed

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 10

with prostatic hypertrophy, mild-to-moderate degenerative disc disease, and decrease in memory; was placed on suicide watch after being assaulted; and who had withdrawn to his cell out of fear of interaction with other inmates). Defendant has offered insufficient support for the conclusion that his health has so deteriorated such that it would be appropriate to consider his circumstances extraordinary and compelling. Having determined that defendant has not made the requisite showing of extraordinary and compelling reasons for compassionate release, the Court need not analyze whether a reduction in defendant's sentence would be consistent with the factors set forth in 18 U.S.C. § 3553(a).

## IV.    CONCLUSION

For all the foregoing reasons, defendant's motion for compassionate release (Dkt. # 298) is DENIED. The parties' respective motions to seal (Dkts. # 297, # 304) are GRANTED. The government's motion to file an overlength brief (Dkt. # 302) is also GRANTED.

IT IS SO ORDERED.

DATED this 27th day of July, 2021.


*MrS Casnik*
Robert S. Lasnik
United States District Judge

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 11